IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2010 JUL 14  A 10: 35

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| DANNY WEEKS; and VICKI WEEKS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.: 1:10-cv-602-MEF |
| v. | ) | |
| | ) | |
| WYETH, INC.; PFIZER, INC.; SCHWARZ | ) | |
| PHARMA, INC.; ACTAVIS ELIZABETH, | ) | JURY TRIAL |
| LLC; and TEVA PHARMACEUTICALS USA, | ) | DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

The Plaintiffs, by and through their attorneys, bring this civil action seeking injunctive relief, damages, and other relief.

1.     The Plaintiffs are entitled to the relief they seek because the Defendants innovated, made, promoted, and sold a prescription medication which Plaintiff Danny Weeks ingested and was hurt by, and because the Plaintiffs' injuries would have been avoided had the Defendants properly warned about the risks of the medication and fulfilled other duties of care owed to persons such as Plaintiff Danny Weeks whom the Defendants knew would ingest the medication and suffer injuries as a result. Danny Weeks' wife, Vicki Weeks, has lost consortium due to her husband's injury from the medication. The medication at issue is metoclopramide, which was innovated and originally marketed under the

brand name Reglan.

## PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff Danny Weeks is an adult resident and citizen of the State of Alabama who resides, and resided at all times material, in New Brockton, Alabama, which is in Coffee County.

3.     Plaintiff Danny Weeks, from approximately 2007 until 2009, a period of time far in excess of twelve (12) weeks, ingested the prescription medicine at issue, which is metoclopramide, also referred to as Reglan, which is its brand name. He did so pursuant to a prescription from his doctor.

4.     By 2009, Danny Weeks had contracted tardive dyskinesia from his ingestion of metoclopramide. Tardive dyskinesia is incurable, and Danny Weeks continues to suffer from it today.

5.     Plaintiff Vicki Weeks is the wife of Plaintiff Danny Weeks and has been his spouse at all times material to this action. She is an adult resident and citizen of the State of Alabama who resides, and resided at all times material, in New Brockton, Alabama, which is in Coffee County.

6.     Defendant Wyeth, Inc. (hereinafter "Wyeth"), is or was incorporated in Delaware, and it maintains or maintained its principal place of business in Madison, New Jersey. It is or was a citizen of the States of Delaware and New Jersey, according to 28 U.S.C. § 1332. Wyeth may be served with process at its

agent for service, which is The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery AL 36109.

7. Wyeth is the successor in interest to A.H. Robins Company, Inc., a Virginia corporation which first obtained approval to make and distribute metoclopramide under the brand name Reglan.

8. Defendant Pfizer, Inc. ("Pfizer"), is a citizen of the State of Delaware, where it is incorporated, and of the State of New York, where it maintains its principal place of business – in New York City – according to 28 U.S.C. § 1332. Pfizer may be served with process through its registered agent, which is The Corporation Company, 2000 Interstate Park Drive, Suite 204, Montgomery AL 36109.

9. Effective October 15, 2009, Pfizer acquired Wyeth in a cash and stock merger. Pfizer, as a result of the acquisition, now owns all assets of Wyeth and has assumed all of Wyeth's existing, potential, and contingent liabilities. It is the successor to Wyeth's liability, as alleged, in this lawsuit.

10. Defendant Schwarz Pharma, Inc. ("Schwarz"), is incorporated in Delaware and maintains a principal place of business in Smyrna, Georgia. It is a citizen of the States of Delaware and Georgia, according to 28 U.S.C. § 1332. Schwarz may be served with process through its registered agent, which is CSC

Entity Services, LLC, 2711 Centerville Road, Wilmington DE 19808.

11. On December 27, 2001, Schwarz purchased the rights and liabilities associated with Reglan from Wyeth pursuant to an Asset Purchase Agreement which obligated Schwarz to be responsible for claims relating to or arising out of the ingestion or use of Reglan from and after March 31, 2002, subject to a right to indemnification by Wyeth up to an amount not presently known by Plaintiffs. Plaintiffs are informed and believe that at all times relevant to this lawsuit, Schwarz and/or one of its predecessors in interest and/or one of its family of wholly owned divisions was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, metoclopramide.

12. Defendant Teva Pharmaceuticals USA ("Teva"), is incorporated in Delaware, and it maintains its principal place of business in North Wales, Pennsylvania. It is a citizen of the States of Delaware and Pennsylvania, according to 28 U.S.C. § 1332. Teva may be served with process through its registered agent, which is Corporate Creations Network, Inc., 15 North Mill Street, Nyack NY 10960.

13. Defendant Actavis Elizabeth, LLC ("Actavis Elizabeth"), is a limited

4

liability company organized under the laws of the State of Delaware, and it maintains its principal place of business Morristown, New Jersey. It is a citizen of the States of Delaware and New Jersey, accordingly. Actavis Elizabeth may be served with Summons and Complaint through its registered agent for service of process, which is United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, Delaware 19904.

14. The Defendants regularly transact business in the State of Alabama and within this judicial district, by, among other things, engaging in commercial activities which include, but are not limited to, the promotion, marketing, and sale of pharmaceutical medications.

15. The Defendants, by virtue of their business activities, have designated actual or constructive agents for service of process.

16. The Defendants are subject to the personal jurisdiction of this Court.

17. At all times material hereto, a substantial part of the events at issue occurred in or about Coffee County, Alabama. Venue arises in this Court, accordingly.

18. The Plaintiffs, all of whom are of age and capacity, are citizens of the State of Alabama. The Defendants are not citizens of the State of Alabama. They are citizens of states other than Alabama, according to 28 U.S.C. § 1332.

Complete diversity exists between the Defendants and the Plaintiffs.

19.     Subject-matter jurisdiction of this action is based upon 28 U.S.C. § 1332. Each Plaintiff, for himself and herself, claims against the Defendants for a sum which exceeds $75,000.00 (seventy-five thousand dollars), exclusive of interest and costs. The amount-in-controversy between each Plaintiff and the Defendants exceeds $75,000.00, exclusive of interest and costs, accordingly.

20.     Joinder of the Plaintiffs' claims is appropriate given that the Plaintiffs seek relief arising out of the same transactions, occurrences, or series of transactions or occurrences, and questions of law or fact common to all of the Defendants will arise in the action.

## ALLEGATIONS OF FACT GIVING RISE TO ALL COUNTS

21.     Metoclopramide, or "MCP," is the generic name of Reglan. Prescription medicines identified as metoclopramide contain the same active ingredient (i.e., drug substance) as Reglan, and they are equivalent to brand name Reglan products in dosage, strength, and all other therapeutically material respects, including potentially beneficial effects and potentially harmful side effects. They differ from brand name Reglan only in therapeutically non-relevant respects such as color, shape, inactive ingredients, and source of manufacture.

22.     MCP is a prescription medication classified as a GI stimulant,

antiemetic, and dopaminergic blocking agent. It is frequently identified as a neuroleptic drug. It is indicated for short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis. The active ingredient of the medicine is metoclopramide, which is a dopamine receptor blocking drug. MCP blocks dopamine transfer in the brain, causing the brain to react and to produce more dopamine receptors so that areas controlling movement become hypersensitive to dopamine, in effect to overreact.

23.     Danny Weeks ingested the Reglan/MCP as prescribed. Mr. Weeks used the drug without substantial change in the condition of the drug between the time of its design and manufacture and the time he ingested it as prescribed.

24.     Patients who use Reglan/MCP for long periods (exceeding twelve weeks) are at a significant and unreasonably dangerous increased risk of developing severe and permanent neurological movement disorders. The disorders usually are diagnosed as tardive dyskinesia ("TD") and/or tardive dystonia. Other serious side effects that may be caused by ingesting Reglan/MCP for longer periods of time include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, stereotypy, tremors which may present as Parkinson's Disease ("Parkinsonism"), visual disturbances, and interference with drug metabolism.

25.     Patients who use Reglan/MCP for long periods (greater than 12 weeks) who are not able to effectively metabolize it are at a greater risk of developing the foregoing serious and permanent injuries.

26.     Prior to ingesting Reglan/MCP, Mr. Weeks never experienced the abnormal involuntary movements or TD which he developed post-ingestion of Reglan/MCP.

27.     When the Plaintiff ingested Reglan/MCP, he was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated about Reglan/MCP by the Defendants, as alleged.

28.     When the Plaintiff ingested Reglan/MCP, he was unaware of the true risks, side effects and/or relationship between the continued ingestion of Reglan/MCP as prescribed and the physical symptoms that he was experiencing.

29.     Had the Plaintiff known of the true risks associated with long-term ingestion of Reglan/MCP, he would not have taken the drug.

30.     The Plaintiff's physician was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated by the Defendants about the medicine, as alleged.

8

31.    Upon information and belief, had the Plaintiff's treating physician been warned by the Defendants of the true risks of Reglan/MCP, which are significant and profound, that physician would not have prescribed the drug to the Plaintiff, or would have discontinued its use immediately upon being informed of the true risks, or would have discontinued it before the permanent onset of the adverse health effects the each Plaintiff suffers as result of ingesting the drug.

32.    The Plaintiff's ingestion of Reglan/MCP, as prescribed, resulted in unnecessary and unreasonably dangerous overexposure to the drug.    Use of Reglan/MCP caused the Plaintiff to suffer serious, permanent, and disabling injuries, including but not limited to injuries of or associated with the central nervous and extrapyramidal motor systems.    Because of the injuries the Plaintiff suffered from the use of Reglan/MCP, he has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain and suffering, psychological injury and other injuries and damages.

33.    The Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of dissemination by the Defendants of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information concerning the potential effects of exposure to

Reglan/MCP and the ingestion of Reglan/MCP to the medical profession, Plaintiff's physician, the Plaintiff, and other foreseeable users of the drug.

34.    Reglan/MCP was not approved by the U.S. Food and Drug Administration ("FDA") for long-term use or for use longer than 12 weeks.

35.    Because of the misleading information that the Defendants provided to physicians, consumers, and the FDA about the true risks associated with the use of Reglan/MCP, as alleged, and because of the failure of the Defendants and each of them to adequately inform physicians generally, including Plaintiff's physician, about the true risks associated with the use of Reglan/MCP before and when the Plaintiff took the drug, the Plaintiff's physician never informed the Plaintiff of the true risks and prevalence of involuntary movement disorders and TD associated with Reglan/MCP.   The physician could not have so informed the Plaintiff, because the Defendants did not inform the doctors of those true risks and prevalence, particularly among persons taking the drug long term.

36.    TD, dystonia, stereotypy, akathisia, and Parkinsonism are serious side effects associated with the ingestion of Reglan/MCP and are debilitating neurological disorders that often result in involuntary and uncontrollable movements of the head, neck, face, arms, legs and/or trunk, as well as, involuntary facial grimacing and related involuntary movements, including but not limited to

10

teeth grinding, tongue thrusting, and tongue chewing.

37. There is no known cure for the TD, dystonia, stereotypy, and Parkinsonism which are produced by Reglan/MCP. Psychosocial morbidity, decreased quality of life, and even mortality have been attributed to TD.

38. Dystonia, a form of dyskinesia and one of the serious side effects associated with the ingestion of Reglan/MCP, is a debilitating neurological disorder that involves involuntary movements and prolonged muscle contraction, resulting in twisting body motions, tremor, and abnormal posture. Orofacial dystonia affects the mouth and face.

39. Akathesia, another serious side effect associated with the ingestion of Reglan/MCP, is a movement disorder characterized by a feeling of inner restlessness and a compelling need to be in constant motion as well as by actions such as rocking while standing or sitting, lifting the feet as if marching on the spot and crossing and uncrossing the legs while sitting. People with akathisia are often unable to sit or keep still, complain of restlessness, fidget, rock from foot to foot, and pace. Akathisia does not respond to treatment with anticholinergics such as benztropine or diphenhydramine HCl, but benzodiazepines and beta-blockers are effective.

40. TD, one of the serious side effects associated with the ingestion of

11

Reglan/MCP, is characterized by involuntary, repetitive movements of the extremities, or lip smacking, grimacing, tongue protrusion, teeth grinding, rapid eye movements or blinking, puckering and pursing of the lips, and/or impaired and involuntary movement of the fingers. Plaintiff Danny Weeks suffers one or more of these symptoms or effects of TD. The symptoms are rarely reversible and there is no known treatment for TD.

41.     Plaintiff, as a result of ingesting Reglan/MCP and being injured by the drug, requires and will require health care and services, and has incurred and will continue to incur medical and related expenses. The Plaintiffs have suffered and will continue to suffer indirect costs, including diminished quality of life and loss of consortium, and direct medical costs for follow-up care, including hospitalizations, treatment and other medical care.

42.     Before and when Mr. Weeks ingested Reglan/MCP, the Defendants failed to warn doctors and patients of information within the Defendants' knowledge which indicated that the drug, when taken for long periods of time, caused serious, permanent, and disabling side effects, including the injuries suffered by the Plaintiff.

43.     Before and when the Plaintiff ingested Reglan/MCP, the Defendants innovated, marketed, manufactured, and/or sold Reglan/MCP, and in so doing,

12

they encouraged long term use of the drug and concealed its true risks and the true prevalence of side effects, particularly among long term users.

44.    Before and when the Plaintiff ingested Reglan/MCP, the Defendants had actual knowledge, through research by independent investigators and by other means, that the risk of TD and other extrapyramidal side effects of Reglan/MCP in patients who take the drug long term, i.e., for more than twelve weeks, is approximately 100 times greater than disclosed in the Defendants' package insert for the drug and in the Physician's Desk Reference ("PDR") monograph for Reglan-brand metoclopramide.   The Defendants took no steps, reasonable or otherwise, to inform the medical profession of that enormously greater risk.

45.    In February 2009, recognizing the inadequate nature of the Defendants' warnings about Reglan/MCP, the FDA issued an advisory requiring the addition of a boxed and black-bordered warning for the drug.   This new warning, appearing at the top of the label, states that "Chronic treatment with Metoclopramide can cause tardive dyskinesia, a serious movement disorder that is often irreversible . . . ."   Additionally, the new warning now tells physicians and patients that "Prolonged treatment (greater than 12 weeks) with Metoclopramide should be avoided in all but rare cases . . . ."   The new warning also states that as many as one in five long term users could contract TD, a prevalence which is

13

catastrophic by any measure and is greater by orders of magnitude than the prevalence held out by the Defendants in the past.

46.     Additionally, the FDA now requires generic manufacturers of the drug to implement a risk evaluation and mitigation strategy, because, according to the FDA, the use of Reglan/MCP "pose[s] a serious and significant public health concern requiring the distribution of a Medication Guide." This Medication Guide, setting out all the risks of the drug and to be given to all users "is necessary for the patients' safe use of Reglan (Metoclopramide) . . . ."

## ALLEGATIONS OF WRONGFUL CONDUCT

## BY EACH DEFENDANT INDIVIDUALLY

47.     At all relevant times up to approximately the end of 2001, Wyeth (as the A.H. Robins Company and/or American Home Products Corporation and/or by some other name) innovated, marketed, promoted, manufactured, and sold Reglan. A.H. Robins Company, Inc., first obtained approval by the FDA to distribute metoclopramide as Reglan under the FDA's New Drug Application ("NDA") schema in 1983.

48.     At all times relevant, Wyeth knew that its predecessor in interest, A.H. Robins Company, Inc., expressly warranted to physicians that Reglan/MCP is safe for long-term use. Wyeth knew that the A.H. Robins' warranties regarding

safety for long-term use were relied upon, and would be relied upon, by ordinary, reasonable and prudent physicians who would share that information with other physicians in their communities and that eventually physicians would come to rely on A.H. Robins' express warranties about Reglan/MCP's safety for long-term use. A.H. Robins' express warranties about the safety of Reglan/MCP for long-term use were false and intentionally and negligently misleading.

49.    As successor-in-interest to A.H. Robins Company, Inc., Wyeth is legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made by A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/MCP, and all liabilities stemming there from.

50.    At all relevant times between approximately the end of 2001 and up to approximately March 2008, Schwarz, in its capacity as Wyeth's successor, innovated, promoted, marketed, manufactured, sold, and/or distributed Reglan.

51.    Upon information and belief, in prescribing Reglan/MCP to the Plaintiff on a long-term basis,  Plaintiff's physician relied upon information published in the package inserts and/or the PDR or otherwise disseminated by the Reference Listed Drug Company ("RLD") and/or the New Drug Application Holder ("NDA holder"), in particular, that information disseminated by Wyeth and

Schwarz.

52.     Wyeth and Schwarz, as the innovators, manufacturers, and sellers and marketers of Reglan/MCP, and as the NDA holders and RLDs for the drug, knew or should have known and could foresee that patients, as third parties to the Defendants' communications about the drug, would be prescribed the drug by physicians who relied on information Wyeth and Schwarz communicated and disseminated about it. Wyeth and Schwarz knew or should have known, and could foresee, that the third parties would include patients such as the Plaintiff, who would and could be injured as a result of the Defendants' communications and the prescribing decisions made in reliance on them.

53.     Reglan/MCP was not and is not approved by the United States Food and Drug Administration for long-term use.

54.     Because of the misleading information that Wyeth and Schwarz provided to physicians and the FDA about the true risks associated with the use of Reglan/MCP, and because of the failure of the Defendants to adequately inform physicians generally, including the Plaintiff's physician, about the true risks associated with use of the drug, particularly among users long term, the Plaintiff's physician never informed him of the serious movement disorders associated with Reglan/MCP, or that the drug was approved only for short term use (up to 12

weeks).

55.    At all times material hereto, Wyeth, individually and as successor-in-interest to A.H. Robins Company, was aware of the serious side effects caused by Reglan/MCP, including but not limited to central nervous system disorders, depression with suicidal ideation, tardive dyskinesia, related involuntary movement disorders, akathisia, tardive dystonia, visual disturbances, and interference with drug metabolism.

56.    Wyeth failed to fully, truthfully and accurately disclose Reglan/MCP data to the FDA, and as a result intentionally and fraudulently misled the medical community, physicians, Plaintiff's physician, and Plaintiff about the risks associated with long term use of metoclopramide.

57.    Under the FDA schema, Wyeth was/is the RLD, under a specific NDA, for Reglan/MCP.

58.    Under the FDA schema, as the RLD for Reglan/MCP, Wyeth had a duty to ensure that its warnings to the medical community were accurate and adequate.  Wyeth had a duty to conduct safety surveillance of adverse events for the drug, and to report any data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

59.    Under the FDA schema, Wyeth knew, as an NDA applicant,  that it

must fully, truthfully and accurately disclose to the FDA data, and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling which includes warnings about risks and side effects, test results for the drug, results of animal studies, results of clinical studies and the drug's bioavailability, because the data and information would be relied upon by the medical community, physicians, Plaintiff's physician, Plaintiff and other like foreseeable users of Reglan/MCP once the NDA was approved and Wyeth was listed as the RLD for Reglan/MCP.

60.   Wyeth knowingly, intentionally, and negligently disseminated misleading information to physicians across the country through the PDR and via other labeling information for Reglan/MCP which misled the medical community, physicians, and Plaintiff's physician about the risks of long term ingestion of the drug.

61.   Wyeth knowingly, intentionally, and negligently disseminated misleading information to physicians across the country through the PDR and via other labeling information for Reglan/MCP which misled the medical community, physicians, and Plaintiff's physician about the increased risk of extrapyramidal side effects, including TD.

62.   On or about December 27, 2001, Schwarz became entitled to access to

all of the information and knowledge then possessed by Wyeth concerning Reglan/MCP.

63.    Schwarz purchased from Wyeth the rights and liabilities associated with Reglan/MCP. Upon information and belief, the terms of that sale obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan/MCP, subject to a right of indemnification from Wyeth up to a certain dollar amount.

64.    At all times material hereto, the Defendants knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the risks associated with use of Reglan/MCP, and that consequently there was a widespread tendency for physicians to prescribe Reglan/MCP for inappropriate long-term use.  Therefore, the Defendants knew or should have known that the package insert and the Physician's Desk Reference monograph for Reglan/MCP did not adequately inform physicians about the risks associated with the drug, particularly for patients whose bodies do not metabolize Reglan/MCP effectively.

65.    The Defendants knew that severe side effects would result from the use of Reglan/MCP in the manner in which physicians were prescribing the drug, and that physicians did not fully understand the risks associated with the drug, and

that physicians, unlike the Defendants, lacked easy access to clinical studies of the drug that were not publicly available and to other material information about it which was available to the Defendants in medical literature and through ongoing litigation.

66.    At all times relevant, and before and during the times that the Plaintiff ingested Reglan/MCP, Wyeth and Schwarz knew, or should have known through the exercise of reasonable care, that the package insert for Reglan/MCP substantially understated the prevalence of acute and long term side effects of the drug.   Wyeth and Schwarz failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short term use and long term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations. Wyeth and Schwarz did not warn physicians by other means, although such other means were available and would have been equally or more effective, alerting the Plaintiff's physician in particular.   Such other means include but are not limited to symposia, letters, and other communications which publicize product risk, particularly when the risk involves a widely prescribed drug such as Reglan/MCP.

67.    At all times relevant, and before and during the times that the Plaintiff ingested Reglan/MCP, Wyeth and Schwarz had actual knowledge, through their

20

own studies and studies by independent investigators, that doctors frequently prescribed Reglan/MCP for long term use that was not safe for patients. Defendant Wyeth and Schwarz had actual knowledge, through their own studies and studies by independent investigators, that nearly one-third of all patients who used the drug received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

68.    Wyeth and Schwarz knew, or through the exercise of reasonable care should have known, that many patients who use Reglan/MCP were not able to effectively metabolize the drug, and that as a foreseeable consequence of that inability to effectively metabolize the drug, those patients would be at greater risk of developing serious and permanent injuries.   Wyeth and Schwarz failed to disclose this information to the medical community and failed to adequately disclose this information to the generic pharmaceutical industry.

69.    The Defendants were aware that their failure to disclose the foregoing information to the medical community and their failure to disclose it to the generic pharmaceutical industry would probably result in serious injury to patients who were prescribed Reglan/MCP.   By failing to disclose the information to the relevant community of prescribing doctors and to the generic pharmaceutical industry, Wyeth and Schwarz acted in willful and wanton disregard of the rights of

persons such as the Plaintiff, and that misconduct injured the Plaintiff.

70.    At all times relevant, and before and during the times that the Plaintiff ingested Reglan/MCP, Wyeth and Schwarz either failed to review the following published articles, or reviewed them and ignored and failed to act on the material information in them:

A.    Jankovic, Joseph. "Metoclopramide-Induced Movement Disorders: A Review of the Literature"; Archives of Internal Medicine, 1989.

B.    Stewart, Ronald. "An Analysis of Inappropriate Long-Term Use in the Elderly"; Annals of Pharmacology, 1992.

C.    Yassa & Jeste, in 1992, regarding the prevalence of tardive dyskinesia in patients exposed to long term neuroleptic drugs.

71.    At all times relevant, and before and during the times that the Plaintiff ingested Reglan/MCP, Wyeth and Schwarz failed to review, or reviewed and ignored, epidemiological studies written by Linda Ganzini in the Archives of Internal Medicine, in June of 1993, and written by Dr. Daniel Sewell in 1994, regarding the frequency of TD in persons taking metoclopramide.

72.    Under the FDA schema, as the Referenced Listed Drug Company for Reglan/MCP, Wyeth and Schwarz have a duty to ensure that their warnings to the medical community are accurate and adequate; have a duty to conduct safety

surveillance of adverse events for the drug, and to report any data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

73.    Wyeth and Schwarz breached their duty to the medical community, to the Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that they failed to conduct post market safety surveillance and report that information to the medical community, Plaintiff's physician, Plaintiff, and other like foreseeable users.

74.    Wyeth and Schwarz breached their duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because they failed to review all adverse drug event information (ADE),  and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/MCP, to the medical community, Plaintiff's physician, Plaintiff, and other like foreseeable users.

75.    The Defendants breached their duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that they failed to periodically review all medical literature regarding Reglan/MCP, and failed to report data, regardless of the degree of significance, regarding the

23

adequacy and/or accuracy of its warnings, efficacy, or safety of Reglan/MCP.

76.    The Defendants breached their duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that they failed to ensure that warnings about Reglan/MCP to the medical community, physicians, Plaintiff's physician, and Plaintiff were accurate and adequate.

77.    The Defendants breached their duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, in that they failed to conduct post market safety surveillance and failed to report that information to the medical community, Plaintiff's physician, Plaintiff, and other like foreseeable users.

78.    The Defendants breached their duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because they failed to review all adverse drug event information (ADE), and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/MCP.

79.    Wyeth and Schwarz had actual and/or constructive knowledge that generic drug manufacturers customarily copy verbatim the package insert for the name brand prescription drug product, which gives the impression to prescribers

and consumers that the information in the package inserts accompanying generic prescription drugs is accurate and not misleading.

80.     Wyeth and Schwarz had actual and/or constructive knowledge that the generic drug manufacturers also typically rely upon the marketing efforts of the drug innovator and brand manufacturer to generate sales of the generic products.

81.     Wyeth and Schwarz had actual and/or constructive knowledge that physicians commonly consult the information disseminated by the drug innovator and brand manufacturer, found in the PDR or otherwise, and rely upon that information when making prescribing decisions.

82.     Wyeth and Schwarz had actual and/or constructive knowledge that physicians would rely upon the information they disseminated to them, regardless of whether the prescriptions written by the physicians might be filled with the brand product, Reglan, or with generic metoclopramide, and that many patients, in accordance with those prescriptions, would be likely to ingest generic metoclopramide.

83.     Defendants Teva and Actavis Elizabeth manufacture generic metoclopramide.  They are so-called "generic" manufacturers.

84.     The Reglan/MCP ingested by the Plaintiff was made and sold by Teva and Actavis Elizabeth.

85.    Before the Plaintiff ingested the drug, Teva and Actavis Elizabeth submitted an Abbreviated New Drug Application ("ANDA") to the FDA, based on representations made by Wyeth and/or Schwarz (as the Reference Listed Drug Company), requesting permission to manufacture, market, and distribute metoclopramide. The ANDAs were approved.

86.    Under the ANDA process, the Code of Federal Regulations required Teva and Actavis Elizabeth to submit a label for metoclopramide initially identical in all material aspects to the reference listed drug label.

87.    Teva and Actavis Elizabeth, utilizing the labels submitted with their ANDAs, began selling generic metoclopramide prior to the dates of the Plaintiff's use of the drug and prior to the Plaintiff's injuries.

88.    Teva and Actavis Elizabeth did not investigate the accuracy of their metoclopramide label, or if they conducted an investigation, they decided against changing the label to state the true risks of the drug, especially the actual prevalence of TD and related disorders among persons taking the drug long term. Teva and Actavis Elizabeth knew or should have known that the risks of the drug were significantly understated on the label, but they took no steps to warn the relevant community of prescribing doctors about the true risks.

89.    Teva and Actavis Elizabeth did not review the medical literature for

metoclopramide, or they ignored relevant information they found in the literature.

90.    Teva and Actavis Elizabeth are and were at all times relevant under a duty to ensure that their metoclopramide label was and is accurate.  Under the Code of Federal Regulations, Teva and Actavis Elizabeth, as ANDA holders, had a duty to ensure that their information about Reglan/MCP to the medical community was accurate and adequate.  They had a duty to conduct post market safety surveillance; to review all adverse drug event information ("ADE"); and to take such steps as were reasonably necessary to notify the medical profession of the true risks and/or prevalence of side effects caused by Reglan/MCP, especially among long term users.  They failed to do so.

91.    To ensure that their warnings about the risks of the prescription drugs they make are continually accurate and adequate, Teva and Actavis Elizabeth, as ANDA holders, are duty-bound to report material information they discover about their drugs to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users of the drugs.  They failed to do so with the generic metoclopramide they made and sold.

92.    Teva and Actavis Elizabeth breached their duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users similarly situated, because they failed to ensure that their Reglan/MCP warnings to the

medical community, Plaintiff's physician, Plaintiff, and other foreseeable users were accurate and adequate.

93.    Teva and Actavis Elizabeth breached their duty to the medical community, Plaintiff's physician, Plaintiff, and other foreseeable users because they failed to conduct post market safety surveillance of Reglan/MCP and failed to report any significant data regarding the adequacy and/or accuracy of their warnings about the drug.

94.    Teva and Actavis Elizabeth failed to exercise reasonable care to independently monitor their sales of metoclopramide and the medical literature, which would have alerted them to the fact that Reglan/MCP was widely over-prescribed as a result of inadequate warnings in the package inserts and PDR monographs for the drug. Teva and Actavis Elizabeth also knew, or should have known in the exercise of reasonable care, that their package insert for the drug substantially understated the prevalence of TD and other acute reactions.

95.    Teva and Actavis Elizabeth, despite their knowledge of the true risks of Reglan/MCP, failed to use reasonable care to modify their package inserts, or to otherwise warn the relevant community of prescribing doctors, or to seek FDA approval to modify their package inserts in order to adequately warn physicians and consumers.  Teva and Actavis Elizabeth did not warn physicians by other

means, although such other means were available and would have been equally or more effective.

96.     Upon information and belief, and as true of Wyeth and Schwarz, had Teva or Actavis Elizabeth strengthened the warning on its package insert or product label to reflect and express the true risks of Reglan/MCP, that warning would have influenced the prescribing decisions of the Plaintiff's physician whether or not the physician actually received and read the label, because physicians are alerted to risk information by means in addition to reading the package insert or product label.  Such other notice includes but is not limited to discussions with colleagues, symposia, letters, publications, and other communications which publicize label or warning changes, particularly when the change involves a widely prescribed drug such as Reglan/MCP.

97.     Teva and Actavis Elizabeth, no differently than Wyeth and Schwarz, willfully and deliberately failed to adequately disclose all actually and/or constructively known risks regarding Reglan/MCP, and in doing so, they acted with a conscious disregard of Plaintiff's safety and/or welfare, and the safety and welfare of others similarly situated.

98.     Upon information and belief, had the Plaintiff's physician been warned by any Defendant of the true risks of Reglan/MCP, which are significant

and profound, the doctor would not have prescribed the drug to the Plaintiff, or would have discontinued its use immediately upon being informed of the true risks, or would have discontinued it before the permanent onset of the adverse health effects that the Plaintiff suffered as result of ingesting the drug. The Defendants' misconduct is a proximate cause of the Plaintiff's injuries, accordingly.

## COUNTS

99.  Each Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

100.  As a direct and proximate result of one or more of wrongful acts or omissions of the Defendants, Mr. Weeks suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; has become and will become liable for medical and hospital expenses; lost and will lose financial gains; has been and will be kept from ordinary activities and duties and has and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

## COUNT I - STRICT LIABILITY

101.  Each Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

102. The Defendants designed, innovated, marketed, manufactured, sold, and/or supplied metoclopramide to each Plaintiff.

103. At all relevant times, the potential risks of ingesting metoclopramide posed substantial danger to the Plaintiff.

104. At all relevant times, ordinary consumers would not have recognized the potential risks and dangers of metoclopramide.

105. At all relevant times, Defendants failed to adequately warn of the potential risks and dangers of metoclopramide. Metoclopramide was defective in that it was not properly designed or prepared and/or was not accompanied by proper warnings regarding the prevalence and severity of adverse side effects associated with its use.

106. At all relevant times, metoclopramide was and is dangerous to patients who ingest it, and the risks and dangers were known or knowable by the Defendants at the time of the drug's distribution to and ingestion by the Plaintiff, including from before the time of Plaintiff's first ingestion, and Defendants failed to provide proper warnings of such risks and dangers to the Plaintiff.

107. At all relevant times, the metoclopramide distributed to and ingested by the Plaintiff was used in a way reasonably foreseeable to all Defendants. The product was defective in that the way in which the product was designed,

innovated, marketed, manufactured and distributed differed from the intended therapeutic result. The defects caused serious injuries to the user when the drug was used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by Defendants. The foreseeable risks of serious harm were so much so that the Plaintiff, if he had known of such foreseeable risks, or if his doctor had been fully informed of them, would not have been prescribed the drug and would not have ingested it.

108. Metoclopramide was defective not only due to inadequate warnings and misrepresentation to the Plaintiff, but also due to inadequate warnings and misrepresentations to healthcare professionals, including the Plaintiff's prescribing doctor. Defendants knew that had healthcare professionals been adequately warned of the serious risks of injury to patients, they would not have prescribed metoclopramide to patients. Neither the Plaintiff nor his physician was warned of the significant dangers from ingesting metoclopramide, dangers which were known by Defendants.

109. Defendants acted with conscious disregard for the foreseeable harm caused by the ingestion of metoclopramide by the Plaintiff.

110. Defendants failed to warn of these serious risks after Defendants had knowledge of same. The information provided to consumers and the medical

32

profession did not reflect Defendants' knowledge that metoclopramide was not safe and effective as indicated. Nor were consumers or doctors made aware of the true likelihood that ingesting the drug could cause adverse health effects which include, but are not limited to, tardive dyskinesia, tardive dystonia, and other, similar central movement disorders such as akathisia, stereotypy, and tremors which may present as Parkinson's Disease ("Parkinsonism").

111. As a result of the defective dangerous condition of metoclopramide, the Plaintiff suffered the injury of tardive dyskinesia.

112. As a result of Plaintiff's ingestion of metoclopramide, the Plaintiff has suffered physical injury; has required and will continue to require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered a diminished capacity to earn wages in the future; has suffered and will continue to suffer mental anguish; diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, and other such damages.

113. The acts, omissions, and other activity alleged are the proximate cause of the Plaintiff's injuries.

## COUNT II - NEGLIGENCE

114. Each Plaintiff hereby incorporates by reference, as if fully set forth

herein, each and every allegation contained in the foregoing paragraphs.

115.   Defendants   were   innovators,   marketers,   manufacturers,   and/or merchants or sellers of metoclopramide.  At all relevant times, Defendants had a duty to exercise reasonable care in the design, manufacturing, marketing, sale, testing and/or distribution of metoclopramide into the stream of commerce.

116.   Defendants   failed   to   exercise   ordinary   care   in   the   design, manufacturing, marketing, sale, testing, and/or distribution of the metoclopramide drug into interstate commerce.  Defendants knew about, but failed to adequately warn of, metoclopramide's propensity to cause central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, stereotypy, tremors, visual disturbances, and interference with drug metabolism.

117.   At all times herein mentioned, Defendants, and each of them, knew, or in the exercise of reasonable care, should have known, that metoclopramide was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, marketed, examined, sold, and prepared and distributed with proper warnings, it was likely to injure the Plaintiff and other users.  Despite the fact that Defendants knew of the adverse health effects of ingesting metoclopramide, they continued to market, distribute, sell, and profit from the sale of metoclopramide to the public.

34

118.   The Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, marketed, distributed, recommended, displayed, and sold and supplied metoclopramide, that the drug was dangerous and unsafe for use by the Plaintiff.

119.   Defendants knew the Plaintiff would foreseeably suffer such injuries as a result of their failure to exercise ordinary care by not disclosing the known risks of injury and the likelihood of injury from ingesting the drug.  Defendants' breach of duty to disclose this information caused injury to the Plaintiff.

120.   As a result of the carelessness and negligence of the Defendants, metoclopramide caused the Plaintiff to thereby sustain the damages and injuries as herein alleged.

121.   The acts, omissions, and negligence alleged are the proximate cause of the Plaintiff's injuries.

## COUNT III – BREACH OF IMPLIED WARRANTY

122.   Each Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

123.   At the time the Defendants marketed, made, distributed, and/or sold metoclopramide to the Plaintiff, Defendants warranted that metoclopramide was

merchantable and fit for the ordinary purposes for which it was intended.

124. Members of the consuming public, including the Plaintiff, were intended beneficiaries of the warranty.

125. Metoclopramide was not merchantable and fit for its ordinary purpose because it had a known propensity to cause TD and related movement disorders, as alleged.

126. The Plaintiff and his physician reasonably relied upon Defendants' representations that metoclopramide was safe and free of defects. The Plaintiff's doctor, in prescribing the drug to the Plaintiff, also reasonably relied on the representations.

127. Defendants' breach of the implied warranty was the direct and proximate cause of the Plaintiff's injuries.

## COUNT IV - BREACH OF EXPRESS WARRANTY

128. Each Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

129. Defendants expressly warranted that metoclopramide was safe and effective to members of the consuming public, including the Plaintiff.

130. Members of the consuming public, including the Plaintiff, were intended beneficiaries of the warranty.

131.  Defendants marketed, promoted, and/or sold metoclopramide as safe and effective.

132.  Metoclopramide does not conform to the Defendants' express representations, because it is not safe and has serious side effects.

133.  Defendants breached their express warranty in one of more of the following ways:

A.   Metoclopramide, as designed, innovated, marketed, manufactured, and/or sold and distributed by Defendants, was defectively designed and placed in to the stream of commerce by Defendants in a defective and unreasonably dangerous condition.

B.   Defendants failed to warn of the likelihood and severity of adverse side effects of metoclopramide, and/or did adequate warnings and instructions on the product, nor did they employ other reasonable means to inform doctors and patients of the risks of the drug.

C.   Defendants failed to adequately test metoclopramide and to monitor its effects, particularly in long term users.

D.   Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew the true risks of injury from metoclopramide.

134. The Plaintiff reasonably relied upon Defendants' warranty that metoclopramide was safe and effective when he purchased and used the medication. The Plaintiff's doctor, in prescribing the drug to the Plaintiff, also reasonably relied on the warranty.

135. The Plaintiff's injuries were the direct and proximate result of Defendants' breach of its express warranty.

136. The acts, omissions, and other activity alleged are the proximate cause of the Plaintiff's injuries.

## COUNT V - FRAUD BY MISREPRESENTATION

137. The Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

138. At all relevant times, Defendants, and each of them, had the duty and obligation to disclose to the Plaintiff, to Plaintiff's physician, to the relevant community of prescribing doctors, and to the consuming public the actual facts about metoclopramide, especially the true likelihood and severity of the drug's adverse and catastrophic side effects, particularly for long term users.

139. At all relevant times, Defendants, and each of them, intentionally, willfully, and maliciously understated – or concealed – and thereby misrepresented to the Plaintiff, to Plaintiff's physician, to the relevant community of prescribing

doctors, and to the consuming public the likelihood of the drug's adverse and catastrophic side effects, particularly for long term users.

140.   At all relevant times, neither the Plaintiff nor his physician were aware of the true facts about the drug, and had they been aware of said facts they would not have acted as they did – that is, the drug would not have been prescribed to the Plaintiff, nor would the Plaintiff have ingested it.

141.   Plaintiff reasonably relied upon Defendants' representations about metoclopramide, and the Plaintiff's doctor, in prescribing the drug to the Plaintiff, reasonably relied on them.

142.   As a result of the Defendants' misrepresentation of the foregoing true facts about the drug, all of which facts are material, the Plaintiff sustained injury and damage.  The acts, omissions, and misconduct alleged are the proximate cause of the Plaintiff's injuries.

## COUNT VI – FRAUD BY CONCEALMENT, SUPPRESSION,
## OR OMISSION OF MATERIAL FACTS

143.   Each Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

144.   Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Reglan/MCP, including

but not limited to the likelihood that users would contract TD and/or related movement disorders. Defendants, with an intent to deceive, purposely downplayed and understated the serious nature of the risks associated with Reglan/MCP, and they did so in order to increase the sales of the drug.

145. Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality about the drug that the Plaintiff's physician, when he prescribed it to the Plaintiff, was materially misinformed and misled about the likelihood that the drug would cause TD and related movement disorders.

146. At all relevant times, Defendants knew or should have known (or would have known had appropriate testing and monitoring been done) that use of metoclopramide causes serious and incurable side effects, and that the side effects occur at a catastrophic rate in long term users.

147. At all relevant times, Defendants engaged in calculated silence, despite knowing both the true facts about the drug and that they (Defendants) had propagated misinformation and misrepresentations about those facts. They remained silent because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the consuming public, including the Plaintiff.

148. At all relevant times, and as the Defendants were aware, safer and less expensive medications similar to Reglan/MCP were available to patients being treated with metoclopramide.

149. Defendants' purposeful silence about the true risks of metoclopramide succeeded in persuading the relevant community of prescribing doctors to prescribe metoclopramide, or to continue to prescribe it.

150. Defendants had a post-innovation, post-manufacturing, and continuing duty to warn, which arose when they knew or learned, or with reasonable care should have known or learned, of the true risks of metoclopramide, especially the actual likelihood that users would contract TD or related movement disorders.

151. Defendants, rather than notify the consuming public and the medical profession of the true facts, purposely concealed, downplayed, or understated the serious risks associated with metoclopramide and expressly or implicitly encouraged use of this drug, including among persons who had taken it for more than twelve weeks (i.e., long term users). They did so despite their knowledge that the drug posed dire risks to the consuming public, particularly long term users.

152. Defendants' actions, all committed in connection with the innovation, manufacturing, marketing, sale, and/or monitoring of Reglan/MCP, constitute knowing omission, suppression or concealment of material facts, made with the

intent that others would rely upon such concealment, suppression, or omission.

153. The Plaintiff, directly and/or through his prescribing physician, was induced to use Reglan/MCP by the Defendants' omission, suppression and concealment. The Plaintiff reasonably relied upon Defendants' representations about the drug, and the Plaintiff's doctor, in prescribing the drug to the Plaintiff, reasonably relied on the representations.

154. As a result of the Defendants' suppression and concealment of the foregoing true facts about the drug, all of which facts are clearly material, the Plaintiff sustained injury and damage. The acts, omissions, and misconduct alleged are the proximate cause of the Plaintiff's injuries.

## COUNT VII - FAILURE TO ADEQUATELY WARN

155. Each Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein and further allege as follows:

156. The Defendants, as innovators, marketers, and/or manufacturers of pharmaceutical medications, have a duty to properly and adequately warn of adverse drug reactions which they know or have reason to know and which may be inherent in the use of pharmaceutical products.

157. The Defendants failed to adequately warn the Plaintiff, Plaintiff's physician, the relevant community of prescribing doctors, and the consuming

public of the risks of metoclopramide.

158.   The Defendants failed to adequately warn of dangers inherent with the use of metoclopramide, and the Defendants' misrepresentations and inadequate disclosures to the Plaintiff, Plaintiff's physician, the relevant community of prescribing doctors, and the consuming public made the product unreasonably dangerous for normal use.

159.   The Defendants are liable to the Plaintiff for the injuries the Plaintiff has suffered, because:

A.   Metoclopramide was unsafe, defective and unreasonably dangerous for its intended and/or foreseeable uses, by reason of a grossly inadequate warning.

B.   In distributing, promoting and selling metoclopramide not accompanied by adequate warnings of the dangers that were known or should have been known; by failing to provide adequate warnings regarding all known or reasonably knowable potential side effects associated with the use of metoclopramide, and the comparative nature, extent, severity, incidence and duration of such adverse effects; and by failing to provide adequate warnings regarding the signs, symptoms, incidence, scope or severity of the side effects,

43

and/or identify appropriate testing, monitoring and/or remedial action; failing to provide adequate warnings in a timely manner and information necessary for their purposes, the Defendants forced the Plaintiff and the consuming public to bear dire, unreasonable, and avoidable risks;

C.     The Defendants expected and knew that metoclopramide would reach the consuming public and Plaintiff in the condition in which the drug and its labeling first were innovated, marketed, manufactured and sold; and

D.     Plaintiff was a foreseeable user of the product and suffered serious harm because of said use.

160.   The metoclopramide designed, innovated, marketed, manufactured and/or sold and distributed by the Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the Defendants knew or should have known of the risks of injury from metoclopramide use, they failed to provide adequate warnings to the medical profession or to consumers of the product, including the Plaintiff, and continued to aggressively promote metoclopramide.

161.   By reason of the foregoing, the Plaintiff was caused bodily injury,

pain, suffering, and economic loss, and the acts, omissions, and misconduct alleged are the proximate cause of that harm.

## COUNT VIII – LOSS OF CONSORTIUM

162.   Plaintiff Vicki Weeks claims damages for loss of consortium as a consequence of the injuries sustained by her husband, which were directly and proximately caused by the acts, omissions, and misconduct of the Defendants.

163.   The acts, omissions, and misconduct of the Defendants, as alleged, are the proximate cause of the loss and harm suffered by Plaintiff Vicki Weeks.

## COUNT IX –

## JOINT AND SEVERAL LIABILITY OF ALL DEFENDANTS

164.   The Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

165.   By virtue of their individual and collective acts and omissions, Defendants are jointly and severally liable to the Plaintiffs as such acts and omissions have proximately caused the Plaintiffs to suffer injury for which each Defendant is responsible.

## AD DAMNUM CLAUSE

By reason of the foregoing, the Plaintiffs have been damaged, and all relief

set forth in this Ad Damnum clause is due.   In particular, insofar as any aforementioned act, omission, or breach of duty or warranty was wanton, willful, grossly negligent, and/or carried out in reckless disregard of the potential for harm to others, the imposition of exemplary or punitive damages is warranted.

WHEREFORE, the Plaintiffs pray that they each be awarded damages exceeding the sum of $75,00.00 (seventy-five thousand dollars) against Defendants jointly and severally, exclusive of interest and costs.  They demand this relief:

1.     Reasonable and just compensation for physical injuries to the Plaintiff's person, in amounts to be determined by a jury, jointly and severally against the Defendants, to the utmost amount allowed by law;

2.     All expenses and economic losses, including but not limited to income and earning opportunities lost due to injury, and all medical and related expenses paid or due to be paid in the future as a result of injury, in amounts to be determined by a jury, jointly and severally against the Defendants, to the utmost amount  allowed by law;

3.     Punitive damages in an amount to be determined by a jury, jointly and severally against the Defendants, to the utmost amount allowed by law;

4.     Appropriate attorney fees and costs and expenses incurred in connection with the litigation of this matter;

5.     That, if necessary, summons and process issue to the Defendants and that, if necessary, the Defendants be served Summons and a copy of this Complaint, and that Defendants be required to appear and answer;

6.     Such other and further relief as is just, proper, and equitable.


Dated:        July 13, 2010

Respectfully submitted by:

_____
W. Lewis Garrison, Jr.
ASB-3591-N74W
wgarrison@hgdlawfirm.com

_____
William L. Bross
ASB-9703-O71W
wlbross@hgdlawfirm.com

Attorneys for Plaintiffs

**Of Counsel:**

HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, AL  35203
Tel:   (205) 326-3336
Fax:   (205) 326-3332

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY
ON ALL ISSUES IN THIS CAUSE**

_____

W. Lewis Garrison, Jr.
ASB-3591-N74W
Attorney for Plaintiffs

Please Serve Defendants by Certified Mail at these addresses:

Teva Pharmaceuticals USA
c/o Corporate Creations Network, Inc.
15 North Mill Street
Nyack  NY 10960

Actavis Elizabeth, LLC
c/o United Corporate Services, Inc.
874 Walker Road, Suite C
Dover  DE 19904

Schwarz Pharma, Inc.
c/o CSC Entity Services, LLC
2711 Centerville Road
Wilmington  DE 19808

Pfizer, Inc.
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery  AL 36109

Wyeth, Inc.
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery  AL 36109