IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANNY WEEKS, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:10-cv-602-MEF |
| v. ) | |
| ) | |
| WYETH, INC., et al., ) | (WO- DO NOT PUBLISH) |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Defendants Wyeth LLC ("Wyeth"), Pfizer Inc. ("Pfizer"), and Schwarz Pharma, Inc.'s ("Schwarz") (collectively "brand name defendants") Motion to Dismiss, or in the alternative, Motion for Summary Judgment, filed August 13, 2010 (Doc. # 22). The brand name defendants argue that because Plaintiff Danny Weeks ("Mr. Weeks") admittedly did not ingest the drug manufactured by the brand name defendants, his claims against them must be dismissed.[1] For the foregoing reasons, that motion is GRANTED in part and DENIED in part.

**I. JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000. The defendants do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(a).

---

[1] The brand name defendants' motion does not specifically address the claim for loss of consortium brought by Plaintiff Vicki Weeks, Mr. Weeks's wife.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the Court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

While  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.  It is not sufficient that the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561 (internal quotation and alteration omitted).

In their opposition to the defendants' motion, the Weeks argue that because the Court is sitting in diversity jurisdiction, the Court should look to Alabama law for the

correct legal standard to apply. This argument directly contradicts the precedent set in *Erie R.R. v. Thompkins*, 304 U.S. 64 (1938). "Under the doctrine enunciated in *Erie* and its progeny, 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). As the standard by which courts should rule on a motion to dismiss pursuant to Rule 12(b)(6) is a procedural one, the federal standard embodied in *Twombly* and *Iqbal* is applicable here.

### III.  FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 2007 and until 2009, Mr. Weeks ingested metoclopramide ("MCP"), a prescription drug approved by the FDA to treat gastroesophageal reflux disease and diabetic gastroparesis. (Doc. # 1 at ¶¶ 3, 22). Importantly, Mr. Weeks admits to ingesting only generic MCP—the drug that Defendants Teva Pharmaceuticals USA ("Teva") and Actavis Elizabeth, LLC ("Actavis") (collectively the "generic defendants") manufactured—and not the brand name drug, Reglan.[2] *Id.* at ¶ 84. In 2009, Mr. Weeks developed tardive dyskinesia, an incurable neurological disorder that causes involuntary and uncontrollable movements of the head, neck, face, arms, legs, and abdomen. *Id.* at ¶¶ 23, 36. An individual who ingests MCP for longer than twelve consecutive weeks is at a significantly higher risk of developing neurological disorders like tardive dyskinesia. *Id.* at ¶ 24.

---

[2] The Weeks do argue that the MCP manufactured by the generic defendants is the "bioequivalent" to Reglan, the product the brand name defendants manufactured.

The Weeks allege that the brand name defendants knew about the risks associated with long-term use of MCP, specifically Reglan, and failed to fully and accurately warn patients, physicians, the Food and Drug Administration (FDA), and/or generic drug manufacturers about those risks. A. H. Robins Company, Inc. ("A. H. Robins"), Wyeth's predecessor in interest and the original manufacturer of Reglan, expressly warranted to physicians that MCP was safe for long term-use.[3] *Id.* at ¶ 48. The Weeks allege that when Wyeth and Schwarz assumed the risks and liabilities associated with Reglan, they should have taken steps to correct any misinformation disseminated by A. H. Robins. Instead, according to the Weeks, the brand name defendants suppressed the true risks associated with Reglan.

The Weeks allege that they were injured by the brand name defendants' failure to disclose the risks associated with Reglan because Mr. Weeks's physician prescribed long-term use of generic MCP based on misleading and incomplete information.[4] *Id.* at ¶ 44.

---

[3] A. H. Robins first obtained FDA approval to distribute MCP, marketed as Reglan, in 1983. Wyeth is the successor in interest to A. H. Robins. (Doc. # 1 ¶ 7). On December 27, 2001, Schwarz purchased Wyeth's rights and liabilities associated with Reglan. *Id.* at ¶ 11. On October 15, 2009, Pfizer acquired Wyeth in a cash and stock merger, assuming all of Wyeth's existing liabilities. *Id.* at ¶ 8.

[4] The allegations in the complaint leave open the possibility that the Weeks could formulate their claims in several ways. First, they could claim that the brand name defendants had a duty to disclose information about generic MCP either to Mr. Weeks himself or to his prescribing physician. Second, they could claim that the brand name defendants had a duty to disclose information about Reglan to Mr. Weeks himself. Third, the Weeks could claim that the brand name defendants had a duty to disclose information about Reglan to Mr. Weeks's prescribing physician. The third alternative is the one endorsed by the Weeks in their response to the brand name defendants' motion to dismiss.

Mr. Weeks believes that his physician would not have prescribed him generic MCP had the physician been adequately warned about Reglan. *Id.* at ¶ 31. The Weeks allege that when prescribing long term use of generic MCP, Mr. Weeks's physician relied upon information about Reglan disseminated by the brand name defendants and contained in the drug's package insert and the Physician's Desktop Reference.

On July 14, 2010, Mr. Weeks and his wife Vicki Weeks brought suit against the brand name and generic defendants based on the injuries Mr. Weeks allegedly suffered as a result of ingesting MCP. The complaint initially contained seven causes of action in addition to requests for loss of consortium and joint and several liability. (Doc. # 1). After the Weeks voluntarily dismissed counts one through four against the brand name defendants, only three substantive claims remain: (1) fraud by misrepresentation; (2) fraud by concealment, suppression, or omission of material facts; and (3) failure to adequately warn. (Doc. # 53).

The brand name defendants have filed a motion to dismiss the claims against them. (Doc. # 22). They argue that because Mr. Weeks admits he did not ingest the medication they manufactured, Alabama products liability law does not provide the Weeks with a remedy against the brand name defendants.

## VI.  DISCUSSION

### A.  *The nature of the Weeks's claims*

As an initial matter, the Court must note that the brand name defendants seem to

5

misunderstand the precise nature of the Weeks's claims.  The brand name defendants argue throughout their brief and reply brief that a brand name manufacturer has no duty to warn a consumer about a generic manufacturer's drug.  The Weeks's claims center, however, on statements the brand name defendants made or failed to make to Mr. Weeks's prescribing physician.  (Doc. # 54 at 9–16).  Specifically, the Weeks argue that the brand name defendants had a duty to disclose information about Reglan, the product they *did* manufacture, to Mr. Weeks's physician.  The Weeks claim that the brand name defendants perpetrated a fraud on the physician by misrepresenting and suppressing the true risks of developing tardive dyskinesia when using Reglan for extended periods of time.  They also claim that the brand name defendants' failure to adequately warn prescribing physicians about Reglan's side effects caused Mr. Weeks's physician to prescribe generic MCP for extended use.

When framed in this way, the Weeks would not be required to demonstrate that the brand name manufacturers had a duty to warn about generic MCP.  The Weeks would not even have to demonstrate that the brand name defendants owed a duty to Mr. Weeks himself, only that the brand name defendants owed a duty to the prescribing physician to adequately disclose and warn about the risks associated with Reglan.

To the extent that the Weeks *do* wish to argue that the brand name manufacturers owed Mr. Weeks a duty to disclose information either about Reglan or generic MCP, the Weeks's claims must fail.  For the reasons stated in  *Mosley v. Wyeth, Inc.*, 719 F. Supp. 2d 1340 (S.D. Ala. 2010), Alabama law does not support the imposition on a

manufacturer of a duty to disclose information to a consumer who is injured by *another* manufacturer's product.[5]  For that reason, the Weeks's claims—to the extent, if at all, they rely on a duty on the part of the brand name defendants to disclose information regarding generic MCP—are due to be dismissed.[6]

### B.  *Applicability of Alabama Extended Manufacturer's Liability Doctrine*

The brand name defendants' overarching argument is that no matter how the Weeks frame the case their claims are based in product liability.  In order to bring a products liability claim under Alabama law the plaintiff must demonstrate that he was injured by a product the defendant manufactured.  Since the brand name defendants did not manufacture the product that injured Weeks, they claim they cannot be held liable under any of the legal theories presented in the Weeks's complaint.  The Court interprets these contentions as an argument that the Alabama Extended Manufacturer's Liability

---

[5] Under Alabama law, the existence of a duty depends on (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.  *Mosley*, 719 F. Supp. 2d at 133 (citing *Pritchett v. ICM Med. Alliance, Inc.*, 938 So. 2d 933, 937–38 (Ala. 2006)).  The key factor underlying the duty inquiry is whether the injury sustained by the plaintiff was foreseeable.  *Id.*  In this case, no relationship exists at all between the Weeks and the brand name defendants.  Additionally, it was unforeseeable that the brand name manufacturer's alleged misrepresentations about Reglan could cause Mr. Weeks to become injured by generic MCP.

[6] The brand name defendants point to numerous other decisions from around the country to support their arguments.  (Doc. # 29 at 17) (discussing how nineteen other states have rejected "these identical claims").  However, the brand name defendants rely on these cases, at least in part to establish they have no duty to warn about generic MCP.  As discussed above, this reliance is incongruous with the Weeks's current iteration of their legal theories.

Doctrine ("AEMLD") established in the companion cases *Casrell v. Altec Indus.* and *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976) subsumed remedies otherwise available at common law.[7] There is some support for the brand name defendants' contention with regard to claims for negligence and wantonness. For some time after the AEMLD was promulgated, courts were uncertain about whether plaintiffs could still seek relief through common law vehicles like negligence and wantoness. Michael L. Roberts, Gregory S. Cusimano, Alabama Tort Law § 19.01 n.11 (5th ed. 2010) ("For a time, there had been some uncertainty whether negligence and wantonness claims merge into an AEMLD claim."). In 2000, the Eleventh Circuit certified that very question to the Alabama Supreme Court in *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1312 (11th Cir. 2000) ("[W]e invite that Court to tell us if the conclusions we have reached about the following state law issues are incorrect," including "that the negligence and wantonness claims merge into an AEMLD claim").

---

[7] The AEMLD is Alabama's version of products liability law, and therefore a state law products liability cause of action implicates the AEMLD. *Hogue v. Logan's Roadhouse, Inc.*, — So. 3d —, 2010 WL 1265194, *3 (Ala. Civ. App. April 2, 2010). Under the AEMLD, a plaintiff is required to show that "he suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer." *Atkins*, 335 So. 2d at 141. Under the AEMLD, if a plaintiff cannot demonstrate he was injured by the product manufactured by the defendant, he cannot hold the defendant liable for the injury. *See Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) ("In an AEMLD action, the plaintiff must prove that the defendant manufactured and/ or sold the allegedly defective product."). Because Mr. Weeks has admitted that he did not ingest medication manufactured by the brand name defendants, if the Weeks's claims have been subsumed by the AEMLD, they cannot survive this motion to dismiss.

In response, the Alabama Supreme Court held that it "[could] not deduce from this Court's announcement of the AEMLD in *Casrell* that the common law was thereby abrogated by negative inference." *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 106 (Ala. 2003). More specifically, the Court held that Spain's negligence and wantonness claims were "viable alternatives to his AEMLD claim." *Id.* Additionally, "[n]umerous Alabama cases suggest that the negligent failure to warn claims do *not* merge into AEMLD claims." *Grimes v. Gen. Motors Corp.*, 205 F. Supp. 2d 1292, 1295 (M.D. Ala. 2002) (Thompson, J.) (cataloging Alabama Supreme Court decisions which allowed failure to warn claims in addition to, or separately from, AEMLD claims).

Because the AEMLD has not subsumed or merged with the common law torts of fraud and failure to warn, the brand name defendants' first argument fails. While the plaintiff in an AEMLD suit must be able to prove that the defendant manufactured the injurious product, the Court sees no reason to import that requirement into other independent torts simply because those torts are based on facts involving a product that caused harm.

The brand name defendants cite four different decisions applying Alabama law to support their proposition that the Weeks's fraud and failure to warn claims are really product liability claims. First, the defendants cite *Mosley v. Wyeth, Inc.*, 719 F. Supp. 2d 1340 (S.D. Ala. 2010). While certainly relevant and factually similar, the result reached in *Mosley* does not support the brand name defendants' argument. In *Mosley*, Judge DuBose granted summary judgment in favor of the brand name defendants on the

9

plaintiffs' fraud claims because the brand name defendants did not owe the plaintiff a duty to disclose information. *Id.* at 1348. In this case, however, the Weeks are not arguing that the brand name defendants had a duty to disclose information to them as individuals. Instead, they go to great lengths to establish that the brand name defendants had a duty to disclose information to prescribing physicians, and that under Alabama law, the Weeks may bring a cause of action based on fraud perpetrated on Mr. Weeks's physician. (Doc. # 54 at 9–16). Without deciding that the Weeks are permitted to bring fraud claims based on misrepresentations made to third parties, the Court notes that whether or not the brand name defendants had a duty to warn the Weeks about Reglan is irrelevant to their legal theory. Assuming they can even bring a claim, they would need to show only that the brand name defendants owed a duty to the prescribing physician. Accordingly, the *Mosley* case is not determinative of the brand name defendants' argument.

The brand name defendants next cite three factually similar Alabama Circuit Court cases in which the plaintiffs were not permitted to maintain claims against defendants who did not manufacture the product in question. However, in each of these cases, the courts merely granted the defendants' motions without any analysis whatsoever. In the *Buchanan* order attached to the brand name defendants' brief, the Circuit Court of Dale County, Alabama granted the motion for summary judgment on the basis that there were no "genuine issue as to any material fact." (Doc. # 29 Ex. 1). The existence or nonexistence of a material fact in *Buchanan* is of no relevance to the case before this

Court. Because these cases contain no analysis at all about why the plaintiff's claims were dismissed, they cannot support the brand name defendants' argument here.

### C. *Necessity of a relationship between the Weeks and the brand name defendants*

The brand name defendants also argue that the Weeks's failure to warn claim must fail because no relationship exists between the plaintiffs and the defendants. In support of that argument they cite two cases, *Franklin Co. Sch. Bd. v. Lake Asbestos of Quebec, Ltd.*, Civ. A. No. 84-AR-5435-NW, 1986 WL 69060 (N.D. Ala. Feb. 13, 1986), and *Thompson-Hayward Chem. Co. v. Childress*, 169 So. 2d 305 (Ala. 1964).

In *Franklin Co. Sch. Bd.*, the plaintiff school board brought suit against several asbestos manufacturers for damage incurred by the installation of asbestos in several school buildings. The school board could not, however, establish which manufacturers had supplied the materials used in the school buildings. 1986 WL 69060, at * 4–5. The court found that because the plaintiff school board could not establish which defendant was the manufacturer of the materials used in the Franklin County schools, the board's negligence claim must fail. *Id.* In this case, however, the Weeks allege that the brand name defendants provided misleading or incomplete warnings regarding Reglan to Mr. Weeks's prescribing physician. Accordingly, unlike in *Franklin Co. Sch. Bd.*, there is no question here about which defendant is responsible for what conduct.

In *Thompson-Hayward*, the second case upon which the brand name defendants rely, the Alabama Supreme Court found that where the plaintiff's complaint alleged

11

neither that defendant manufactured the injurious herbicide nor sold it to the plaintiffs, the plaintiffs could not establish that the defendants owed them any duty to warn about the herbicide. 169 So. 2d at 291–92. In this case, however, the Weeks have clearly alleged that the brand name defendants manufactured Relgan and therefore that they had a duty to warn Mr. Weeks's physician about the risks associated with the drug. Accordingly, the dicta in *Thompson-Hayward* stating that "the relationship of the parties must be stated in order to establish a duty" does not require the dismissal of the Weeks's claims in this case. *Id.* at 291.

The Weeks's half-hearted response to the brand name defendants' argument is based on the *Clarke Indus., Inc. v. Home Indem. Co.*, 591 So. 2d 458 (Ala. 1991), which the Weeks claim stands for the proposition that a plaintiff's failure to warn claim can survive even though plaintiff was injured by a "replica product defendant did not make." (Doc. # 54 at 17). In *Clarke*, an insurance company sued the manufacturer of a floor sander after the dust in the sander's dust collection bag spontaneously combusted. *Id.* at 459. The homeowners' residence was completely destroyed by fire as a result. *Id.* The manufacturer appealed the trial court's denial of a motion for judgment on the pleadings, claiming in part that the plaintiff had failed to prove that there was no substantial change in the condition of the machine at the time the homeowner used it. *Id.* at 462. The Alabama Supreme Court found that the substitution of a different manufacturer's dust collection bag did not render the sander substantially changed because Clarke knew that the dust collection bag would eventually need to be replaced. *Id.* Accordingly, Clarke

12

could have placed the necessary fire warnings on the machine itself, and not on the dust collection bag. *Id.*

*Clarke* does not stand for the proposition, however, that a plaintiff can bring suit based on the manufacturer's failure to warn when the plaintiff did not actually use the manufacturer's product. There is no dispute that the homeowner in *Clarke* used a sander manufactured by the defendant. The fact that the homeowner used a non-Clarke replacement part on a sander manufactured by Clarke did not render the sander a "replica product defendant did not make." (Doc. # 54 at 17). The Clarke case is easily distinguished from the facts here, where Mr. Weeks ingested a product wholly manufactured by a company other than the brand name defendants. Accordingly, the Weeks's reliance of *Clarke* is misplaced and does not persuade the Court that a plaintiff may maintain a failure to warn action against a defendant who did not manufacture the injurious product.

After thoroughly reviewing the cases cited by both sides, the Court finds that neither side has provided a case on point. The defendants' cases do not establish that a relationship between the Weeks and the brand name defendants is required when the plaintiff's claims are based on fraud perpetrated against the prescribing physician. Therefore, the defendants have not demonstrated, based on this argument, that the Weeks fail to state a claim for which relief can be granted.

### D. *Existence of a duty to disclose*

Next, the brand name defendants argue that they owe no duty to disclose

information about the generic MCP to the Weeks.  Again, this argument relies on a misunderstanding of the Weeks's claims.  The Weeks contend that the brand name defendants owed Mr. Week's prescribing physician a duty to disclose information about Reglan. Accordingly, whether or not the brand name defendants owed a duty with regards to MCP is irrelevant.

## V. CONCLUSION

Because the brand name defendants' arguments do not persuade the Court that the Weeks's claims should be dismissed at this juncture, it is hereby ORDERED that the brand name defendants' motion to dismiss is DENIED in part.[8]  As described above, to the extent that the Weeks wish to bring a claim against the brand name defendants based on a duty to disclose information about generic MCP, it is ORDERED that their claims are DISMISSED and the brand name defendants' motion is GRANTED in part.

Done this the 31st day of March, 2011.

                                            /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE

---

[8] The defendants do not argue that Mr. Weeks failed to allege reliance on the alleged misrepresentations made about Reglan to the prescribing physician or that Mr. Weeks's injury was not proximately caused by the alleged misrepresentations about Reglan.  Instead, the brand name defendants chose to argue only that they owed no duty to the Weeks.